UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATONYA C. DAVIS,

        Plaintiff,

v.

                                       Case No. 13-cv-13800
                                       Honorable Gershwin A. Drain

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [#11], GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [#14], AND AFFIRMING THE COMMISIONER'S
DECISION PURSUANT TO 42 U.S.C. §405(g)**

## I. INTRODUCTION

Plaintiff, Latonya C. Davis, filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act") on October 7, 2010. *See* (Tr. 184-93). Plaintiff asserted that her disability began on January 15, 2010. *See* (Tr. 184, 191). The claim was initially disapproved by Defendant, Commissioner of Social Security ("the Commissioner"), on January 4, 2011. *See* (Tr. 134-41). Plaintiff requested a hearing, which was held on October 21, 2011. *See* (Tr. 144-45) ("Request for Hearing"); (Tr. 36-82) ("Hearing Transcript").

In a decision dated May 18, 2012, Administrative Law Judge ("ALJ") James N. Gramenos found that Plaintiff was not disabled. *See* (Tr. 17-35). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

review on July 26, 2013. *See* (Tr. 1-6); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

On September 6, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision pursuant to 42 U.S.C. § 405(g). *See* Dkt. No. 1. This matter is presently before the Court on cross-motions for summary judgment. *See* Dkt. Nos. 11, 14. For the reasons discussed herein, the Court will **DENY** Plaintiff's Motion for Summary Judgment [#11], **GRANT** the Commissioner's Motion for Summary Judgment [#14], and **AFFIRM** the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II. ADMINISTRATIVE PROCEEDINGS

### A. Governing Law for Administrative Proceedings

The "[c]laimant bears the burden of proving [their] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.,* 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.,* 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB Program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI Program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). Title XVI benefits are available to poverty stricken adults and children who become disabled. *Id.*

While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007). "Disability" is defined as an:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)(DIB); 20 C.F.R. § 416.905(a)(SSI). The Commissioner's regulations provide that disability is to be determined through the application of the following five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.,* 2008 WL 4793424 (E.D. Mich. 2008) (citing 20 C.F.R. §§ 404.1520, 416.920); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 534 (6th Cir. 2001)). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Com'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003) (cited with approval in *Cruse v. Comm'r of Soc. Sec.,* 502 F.3d 532, 540 (6th Cir. 2007)). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [Plaintiff] could perform given [her] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).   If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently, and even where substantial evidence supports the opposite conclusion. *See McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### B.  Administrative Record

A review of the medical evidence contained in the administrative record, and presented to the ALJ, indicates that Plaintiff had a history of complaints regarding neck and back pain. *See*, (Tr. 352, 409, 412-57).   On July 26, 2008, A. Christine Watt, M.D., conducted a radiology assessment of Plaintiff's lumbar spine. *See* (Tr. 352).  Plaintiff complained of lower back pain secondary to being assaulted, however the assessment resulted in "negative" findings. *Id.* ("Bone mineralization is normal. Height and alignment of the lumbar vertebrae are maintained. There is no evidence of fracture or destructive process. The apophyseal joints have a normal appearance.").

Prior to the alleged onset date of January 15, 2010, the record indicates that Plaintiff attended physical therapy from December of 2005 to August of 2009 and experienced functional improvements. *See* (Tr. 409) (noting "[p]atient states that therapy has helped her," and noting that the goals of therapy had been met in full/in part).

-4-

On November 6, 2009, a chiropractor diagnosed Plaintiff with "cervical segmental dysfunction," and a "chronic sprain[.]" (Tr. 471).  The chiropractor continued on to state that Plaintiff's "prognosis at this time remains guarded," and that "x-rays revealed cervical hypolordosis as well as left spinous rotation of C4, C5." *Id.*

Plaintiff visited St. John Occupational Health Partners on November 23, 2009 proclaiming she suffered from "upper to mid back pain since 2009." (Tr. 412).  Plaintiff was diagnosed by James E. Denier, M.D., with "cervical radiculopathy," however Dr. Denier noted that there was "[n]o evidence of acute fracture." *Id.* at 132. The report identified, "early degenerative changes of the lower cervical spine," and Plaintiff was ordered to return to restricted work, where she could lift no more than 15 pounds, until her next appointment on December 7, 2009. *Id.* at 133.

At the December 7, 2009 appointment Plaintiff had an X-ray of her cervical spine, which indicated that Plaintiff had Degenerative Joint Disease (DJD) of her lower cervical spine. *See* (Tr. 420).   The assessment did not identify evidence of radiculopathy. *See id.*   After this appointment, Plaintiff's work restriction was removed, and Plaintiff was cleared to return to regular work. *Id.* At Plaintiff's December 7, 2009 appointment, her blood pressure was listed at 149/96. *See* (Tr. 421).

On January 13, 2010, Robert E. Aquino, D.O., indicated that Plaintiff was a patient in his "internal medical practice since 2003," and she suffered "from scoliosis, myofacial pain syndrome and is unable to work at this time." (Tr. 435).  Dr. Aquino conducted an examination of Plaintiff, which revealed that Plaintiff weighed 235 pounds and had a blood pressure of 120/80. *See* (Tr. 437).  Dr. Aquino referred Plaintiff to physical therapy, but the notes did not

indicate limitations that would preclude a limited range of light exertional activity. *See* (Tr. 436-39).

On February 5, 2010, Plaintiff visited Dr. Aquino for an annual pelvic/well female examination. *See* (Tr. 440-44).   On February 24, 2010, Dr. Aquino referred Plaintiff for further treatment. *See* (Tr. 447-49).   However, nowhere in Dr. Aquino's notes does he note limitations that would preclude a limited range of light activity.

February 18, 2010, Plaintiff visited Muzaffar Awan, M.D., who reported that Plaintiff had a condition identified as "straightening of the cervical spinal curvature with muscle spasm, positive trigger points in the suboccipitals and lower cervical paravertebrals and upper trapezius muscles, and positive Spurling on the left with 5/5 muscle strength that is within normal limits." (Tr. 519). Dr. Awan's impressions were: "1. CTD, 2. Cervical, TL and L-5 pain with possible disc herniation, 3. Left cervical, TL and bilateral L-S radiculitis, and 4. "Cervicogenic Cephalgia." *Id.*

On February 25, 2010, Plaintiff visited a chiropractor who indicated that Plaintiff was totally disabled, could only occasionally lift/carry 1-10 pounds, could only sit for one hour, stand for 30 minutes, and walk for 30 minutes. *See* (Tr. 459).   Less than a month later, on March 10, 2010, Vivek Sehgal, M.D., conducted an MRI on Plaintiff's cervical spine and found that "[t]here is slight loss of normal cervical lordosis. The bone marrow signal is normal. Vertebral bodies are of normal configuration, size and signal.  The craniocervical junction is normal. The cord is of normal course, caliber and signal." (Tr. 477).   Dr. Sehgal's overall impression was a "[n]ormal MRI of cervical spine." (Tr. 478).

On April 11, 2010, Hardik Shah, D.O., completed an examination of Plaintiff following her referral from Dr. Aquino.  According to Dr. Shah, Plaintiff's physical examination revealed a

"27 year old female with a bright and appropriate affect." (Tr. 501). Dr. Shah noted that Plaintiff's "posture is fairly well maintained and she had a good range of motion of the cervical spine and bilateral shoulders." *Id.* Shah found that Plaintiff's "[u]pper trapezius muscles were tense bilaterally and there was tenderness to palpation of bilateral scalene origin and upper trapezius origin and insertion." *Id.*

Shah noted that Plaintiff's "[n]eurological and vascular examinations were unremarkable," her "Spurling's test was negative," and her "[o]steopathic examination revealed myofascial tension of the cervical and thoracic regions and supraspinatus tender points bilaterally." *Id.* Shah noted that Plaintiff was treated with myofascial release and strain-counterstrain techniques on March 23, 2010. *Id.*

On April 29, 2010, Plaintiff returned to a chiropractor who again indicated that plaintiff was totally disabled. However, this visit the chiropractor indicated that Plaintiff could frequently lift 1-10 pounds, occasionally carry 1-10 pounds, and could spend 30 minutes total time on her feet. *See* (Tr. 465).

On July 10, 2010, Plaintiff underwent a consultative evaluation by Katherine H. Karo, M.D., for the State agency. The examination indicated that Plaintiff entered "ambulating without the use of an assistive device," and that she stated she had endurance to sit for 20 minutes and stand and walk for 30 minutes. (Tr. 465). The general survey noted that Plaintiff was "alert and oriented to time, person and place." *Id.* Overall there was no significant limitation noted by Dr. Karo.

Plaintiff's neurological examination indicated that there was no evidence of focal muscle atrophy in the right or left upper or lower extremity. (Tr. 484). Further, the neurological examination noted that muscle tone was normal in all extremities and that muscle strength is

generalized "5/5." *Id.*   Plaintiff's musculoskeletal examination revealed that there was no evidence of flattening of the cervical lordosis, no tenderness of the cervical spine, and no muscle spasm. *See* (Tr. 484-85). Dr. Karo noted that "[t]he patient is able to ambulate without the use of an assistive device . . . is able to heel walk, toe walk and tandem walk . . . can sit and stand without assistance . . . [and] is able to bend, stoop, push and pull, refer current abilities." (Tr. 485).

Mental health specialist, H. Gummadi, M.D., also conducted an examination on July10, 2010 for the state agency. With respect to Plaintiff's attitude and behavior, Gummadi noted that Plaintiff was in contact with reality, had low self-esteem, and that "no psychomotor retardation was present." (Tr. 492).   Gummadi noted that Plaintiff was cooperative,  motivated to get better, had insight into her current problems, and that there "does not seem to be a tendency to exaggerate symptoms." *Id.*

Gummadi noted that Plaintiff "described her mood as being depressed and her affect was constricted." *Id.*   Gummadi concluded by noting:

> Based upon today's examination, it appears the patient seemed to be able to understand and follow simple instructions. She seems able to perform simple, day to day routine tasks. Due to her depression and limitations she is restricted to work with supervision of coworkers and supervisors in public.

*Id.* Ultimately, Gummadi diagnosed Plaintiff with the following: "dysthymia; rule out mood disorder; rule out bipolar disorder, depressed type; Global Assessment of Functioning [GAF] of 55." (Tr. 493).

On July 15, 2010, a nerve conduction study was completed by Dr. Awan who found "no electrophsyiologic evidence of cervical radiculopathy," and noted that "[n]erve conduction studies sensory and motor are also WNLS." (Tr. 525).   On August 5, 2010 an evaluation

indicated that Plaintiff's condition was improving with rest and medication, but also noted that increased activity makes Plaintiff's condition worse. *See* (Tr. 516).

On September 23, 2010, Dr. Awan noted that Plaintiff has "moderate to severe spasms of thoraco-lumbar, and lumbrosacral paravertebral musculature," and that her "gait is stiff but she is able to toe and heel walk with some difficulty." (Tr. 529). Dr. Awan also noted that Plaintiff had loss of cervical curvature; moderate spasms of her mid cervical; cervicodorsal and scapular musculature; has moderate restrictions of her active and passive motion; and had trigger points in her cervicodorsal musculature and upper trapezius musculature. *Id.* He noted her provocative maneuvers reproduced pain in her bilateral scapular regions; her Spurling maneuver was positive on the left; her reflexes were intact in both her uppers; and her muscular strength in her uppers was normal. *See id.*; *see also* (Tr. 560) (outlining a similar report from an examination completed on December 9, 2010).

In October of 2010, Plaintiff was diagnosed with Type II diabetes by Dr. Mizraki. *See* (Tr. 542). On December 15, 2010, another psychiatric evaluation was conducted by Atul Shah, M.D., who noted that Plaintiff had "no tendency to minimize symptoms." (Tr. 551). Plaintiff explained in great detail how she felt, and informed Dr. Shah that she had been feeling sad and depressed for a long time and that her depression had been getting worse over the years. *Id.* Dr. Shah concluded his evaluation by noting that Plaintiff had "moderate functional impairment for occupational activity because of major depressive disorder, recurrent, with psychotic features her ability to interact with coworkers, supervisors and even family members." *Id.*

Plaintiff met again with Dr. Awan on February 24, 2011. Dr. Awan indicated Plaintiff's reports of "constant" cervical pain and need for household assistance. *See* (Tr. 565). Plaintiff also indicated that her back pain had improved, and Dr. Arwan noted that Plaintiff "has moderate

palpable spasms of her thoraco-lumbar, and lumbrosacral musculature . . . [h]er Motor exam graded 5/5 in her lower extremities . . . [and h]er gait is stiff but she is able to toe and heel walk with some difficulty." *Id.*

In an initial psychiatric evaluation dated May 23, 2011, by Govindan Sadasivan, M.D., Dr. Sadasivan diagnosed Plaintiff with bipolar disorder, mood disorder, and GAF 50 concluding that Plaintiff has strong "FH of mood disorder & had early onset of illness from age 10 but had no counseling or treatment till [sic] now & needs to be started on meds & stabilized." (Tr. 585).

## C. ALJ's Findings

Plaintiff was 38 years of age at the time of the most recent administrative hearing. *See* (Tr. 40). Plaintiff had past relevant work history as a bus driver, sandwich maker, box maker, retail cashier, and store laborer. *See* (Tr. 27). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since January 15, 2010, the alleged onset date. *See* (Tr. 20). At step two, the ALJ found that Plaintiff suffered from the following identifiable "severe" impairments within the meaning of the second sequential step: cervical spine curvature, obesity, diabetes mellitus, depression, bipolar disorder, and mood disorder. *See id.* At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *See* (Tr. 20-27). At step four, the ALJ found that Plaintiff could not perform any of her previous relevant work. *See* (Tr. 27). At step five, the ALJ relied upon testimony of a vocational expert and denied Plaintiff benefits because Plaintiff could perform a significant number of jobs in the national economy. *See* (Tr. 28-30).

-10-

**D. ALJ's Conclusion**

The ALJ determined that Plaintiff has the residual functional capacity to perform a range of light work as it is defined by Federal Regulations. *See* (Tr. 22) (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)).[1]   The ALJ determined that Plaintiff retained the following residual function capacity:

> (1) an ability to occasionally stand and/or walk, with normal breaks, for at least a period of 6 hours during a normal 8 hour work period; (2) a functional ability to engage in the sitting position for periods of time upwards of 6 hours when performing work activity; (3) lifting abilities of up to at least 15 pounds occasionally and at least up to 10 pounds frequently; (4) eliminate from consideration jobs that would require the worker to engage in bending from the waist and/or knees to pick up objects or items from the floor level if the job description required as movements; (5) eliminate from consideration jobs that would have extremes of cold, heat, wetness or humidity; (6) eliminate from consideration jobs that have hazards in the work setting from unprotected areas of moving machinery; heights; ramps; ladders; and scaffolding; (7) is limited to unskilled work/job as defined in the regulations as requiring "little or no judgment and can be learned in a short period of time;" (8) can communicate in the English language; (9) has the basic mental ability to understand, carry out and remember simple unskilled work instructions; (10) has the mental functional ability to respond appropriately to supervision when performing unskilled work activity; (11) has the mental functioning ability to respond appropriately to usual work situations, and with co-workers, when performing unskilled work activity; and (12) has the mental functional abilities in dealing with changes in a routine unskilled work setting.

*Id.*   In making his decision, the ALJ asserts that he considered all of Plaintiff's relevant symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical and other evidence in the record given the federal regulations. *See id.*

---

[1] According to Federal regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567(b); 20 C.F.R. § 416.967(b).

(citing 20 C.F.R. §§ 404.1529, 416.929; Soc. Sec. Rul. 96-4p, 96-7p).   Additionally, the ALJ

considered opinion evidence in accordance with the federal regulations. *See id.* (citing 20 C.F.R.

§§ 404.1527, 416.927; Soc. Sec. Rul. 96-2p, 96-5p, 96-6p, 06-3p).

The ALJ considered the total record and found that Plaintiff's medically determinable

impairments could cause some of the alleged symptoms. *See* (Tr. 23). However, given the

credible evidence in the record, the ALJ concluded that Plaintiff's allegations regarding the

intensity, persistence, and limiting effects of the symptoms were not credible to the extent that

Plaintiff was precluded from performing all work that exists in the regional and national

economy. *See id.* Specifically, the ALJ found that the "record does not fully support claimant's

allegations of limitations and does allow for a finding claimant retains sufficient 'residual

functional capacity' to perform work activity." *Id.*

The ALJ highlighted the fact that there was a radiology assessment of Plaintiff's lumbar

spine that resulted in negative findings in 2008. *See* (Tr. 23) (citing (Tr. 352)).   Furthermore,

since that period, the ALJ highlighted that there were functional improvements during Plaintiff's

time in physical therapy. *See* (Tr.23) (citing (Tr. 409)).

The ALJ considered the treatment notes of Plaintiff's chiropractor from February of

2010, but did not give the chiropractor's input the special consideration of a treating physician.

*See* (Tr. 24-25).   Instead, the ALJ determined that the chiropractor's records and statements

lacked credibility in light of an MRI that was conducted in March of 2010, which indicated that

Plaintiff's cervical spine was normal. *See* (Tr. 25) (citing (Tr. 478)).

Additionally, the ALJ only gave "some evidentiary weight to Dr. Shah's opinion," but

"not controlling evidentiary weight to Dr. Shah's opinion [that] claimant has 'moderate

functional impairment for occupational activities.'" (Tr. 26).   According to the ALJ, he

-12-

discounted Dr. Shah's opinion because the report relied "dominantly upon claimant's subjective statements and not objective medical evidence." *Id.* The ALJ contrasted Dr. Shah's opinion relying upon Plaintiff's subjective statements with previous psychiatric exams where physicians "opined that claimant was oriented and able to sustain concentration and persist." *Id.* The ALJ determined that the latter opinion, by previous physicians, was "consistent with persuasion that claimant has the 'residual functional capacity' that includes an ability to maintain function with simple, unskilled tasks on a sustained basis." *Id.*

In making his decision, the ALJ gave significant weight to Dr. Karo's July 10, 2010 findings because the ALJ found them to be "generally consistent with the objective test results in the record." (Tr. 25). The ALJ found Plaintiff to be credible "to the extent that claimant should not perform greater than a range of unskilled work." (Tr. 26). However, after considering "the totality of the record evidence" the ALJ concluded that "claimant's medical conditions will not interfere with her ability to function independently, appropriately, effectively, and on a sustained basis in the performance of a range of light work." (Tr. 27).

### III. LAW & ANALYSIS

#### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen,* 800 F.2d at 537.

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997).

In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir.1 984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers,* 486 F.3d at 247; *Jones,* 336 F.3d at 475 (stating an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse,* 502 F.3d at 542 (stating the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting Soc. Sec. Rul. 96–7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. *See* 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support

a different conclusion." *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones,* 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky,* 35 F.3d at 1035 (citing *Mullen,* 800 F.2d at 545) (citations omitted).

The scope of this Court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512–13; *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.,* 198 Fed. Appx. 521, 526 (6th Cir. 2006).

**B. Legal Analysis**

Plaintiff puts forth two arguments to contend the ALJ's decision was not supported by substantial evidence and was not rendered in accordance with federal regulations. *See* Dkt. No. 11 at 12. Plaintiff s first argument is two-fold, and urges the Court to find that the ALJ erred in reviewing the examinations conducted by Dr. Awan. First, Plaintiff contends that the ALJ ignored certain findings of Dr. Awan and impermissibly cherry-picked others to reach his

-15-

conclusion. *See id.* at 12-13 (citing *Davis v. Comm'r of Soc. Sec.,* No. Civ. A. 10-14518, 2011 WL 7330518, at \*8 (E.D. Mich. Oct. 27, 2011) *report and recommendation adopted*, No. 10-14518, 2012 WL 511937 (E.D. Mich. Feb. 16, 2012)).  Second, Plaintiff argues that the ALJ failed to acknowledge that Dr. Awan was Plaintiff's treating physician and, in so doing, failed to give Dr. Awan's medical source opinions controlling weight as required by federal regulations. *See id.* at 13-14 (citing 20 C.F.R. § 404.1527(d)(2), (c)(2)-(6); Soc. Sec. Rul. 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

In response to Plaintiff's first argument, the Commissioner argues that "Plaintiff fails to identify any opinion issued by Dr. Awan," that meets the regulatory definition of a medical opinion. *See* Dkt. No. 14 at 8 (citing 20 C.F.R. § 404.1527(a)(2)).  Instead, the Commissioner argues that "Plaintiff only identifies objective examination results and [attempts] to re-classify them as medical opinions" *Id.* at 9; *see also id.* (citing *Bass*, 499 F.3d. at 510, and *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 749 (6th Cir. 2007), to support the contention that "there is no medical opinion at issue.").

The Commissioner argues that Plaintiff's grievance boils down to a wish that "the ALJ would have weighed the medical evidence differently to find further limitations in Plaintiff's work-related abilities[.]" Dkt. No. 14 at 8.  Despite Plaintiff's wishes, however, the Commissioner notes that arguments relying on "cherry-picking" of the record are seldom successful, and contends that the ALJ weighed the evidence in this case to reach a conclusion that was within the ALJ's reasonable zone of choice. *See id.* at 7-8 (citing *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *White v. Comm*'r of Soc. Sec. *,* 572 F.3d 272, 284 (6th Cir. 2009); *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830,833 (6th Cir. 2006)).

-16-

Plaintiff also argues that the "ALJ compounded [his] error [regarding Dr. Awan] by simply disregarding the opinions of [P]laintiff's treating chiropractors[.]" Dkt. No. 11 at 14. Plaintiff acknowledges that federal regulations state that chiropractors were not "acceptable medical sources," however, Plaintiff argues that the ALJ's declaration that their opinions "lack credibility" without explanation was in violation of the federal regulations. *See id.* at 14-15 (citing 20 C.F.R. §§ 404.1527, 404.1513(d)(1); SSR 06-03p). Specifically, Plaintiff argues "it was not enough for the ALJ to simply declare that chiropractors were not an acceptable medical source and then simply disregard their opinions without further discussion." *Id.* at 15.

In response to this argument, the Commissioner states that the "ALJ did not dismiss the opinions for the sole reason they were made by non-acceptable medical sources." Dkt. No. 14 at 8. Instead, according to the Commissioner, the ALJ contrasted the normal cervical MRI in March 2010 with the chiropractors rather extreme opinions concerning physical limitations." *Id.* at 9. According to the Commissioner, the ALJ made a reasonable finding when discounting the chiropractor's opinion, because the ALJ contrasted the chiropractor's "extreme" opinions with "a normal MRI the next month." *Id.* Again, the Commissioner contends that the ALJ weighed the evidence in this case to reach a conclusion that was within the ALJ's zone of reasonable choices. *See id.* (citing *McClanahan,* 474 F.3d at 833).

After reviewing the briefs of the Parties, the Court agrees with the Commissioner. Plaintiff's first argument regarding the ALJ's review of Dr. Awan's examination fails because the Court does not find there were medical opinions for which the ALJ failed to give controlling weight. With respect to Plaintiff's second argument, Defendant is correct in noting that the ALJ did not dismiss the opinions of the chiropractor solely because chiropractors' opinions are not considered medical sources under federal regulations.

-17-

    **i.**      **The ALJ did not err in his consideration of Dr. Awan's examination of Plaintiff.  Dr. Awan did not provide a medical opinion, which would be entitled to controlling weight, and the ALJ did not cherry pick portions of Dr. Awan's findings that supported a non-disability while ignoring the rest.**

The Sixth Circuit has interpreted the Social Security regulations to make a distinction between a treating physician's treatment notes or comments, and a treating physician's "medical opinion." *See* 20 C.F.R. § 404.1527(a)(2); *Bass,* 499 F.3d at 510 (finding that a doctor's observations do not qualify as "medical opinions" under the Social Security regulations, and "without more, are not the type of information from a treating physician which will be provided great weight under 20 C.F.R. § 404.1513(b)"); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d at 749 (noting that a treating doctor's general findings are relevant, but not controlling without a residual functional capacity ("RFC") assessment).

The regulatory definition of a medical opinion includes only those statements "that reflect *judgments* about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added).

Medical opinions that meet the regulatory definition are entitled to controlling weight; however, the Sixth Circuit has stated definitively that mere *observations* about a claimant's condition will not qualify as a sufficient medical opinion. *See Bass,* 499 F.3d at 510 ("Observations about plaintiff's gait and ambulation, then, are more like statements made by plaintiff and about his conditions, statements that the ALJ here found not entirely credible when compared to the objective medical evidence.").[2]

---

[2] *See also Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 n. 3 (6th Cir. 2009) (reasoning that a treating physician's statement that fails to address "the specific extent of [Plaintiff's] limitation" is "outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2)."); *Maloney v. Comm'r of Soc. Sec.,* No. 10–2583, 2012 WL

-18-

Here, Plaintiff points to "a number of positive examination findings" and "objective abnormalities" that were purportedly ignored by the ALJ. *See* Dkt. No. 11 at 12 (citing (Tr. 519-29, 559-60, 565-66, 735-36, 749-54)). However, the documents cited by Plaintiff detail Dr. Awan's recitation of Plaintiff's subjective complaints and Dr. Awan's observations and treatment of Plaintiff. Dr. Awan does *not* provide opinions relevant to Plaintiff's functional limitations. Therefore, there is no evidence of limitations that were ignored by the ALJ.

For example, Dr. Awan's latest notes, from February 24, 2011, indicate Plaintiff made the following subjective statements: "She states her lower back pain has improved," and notes that "[s]he is not working at this time and needs assistance with household chores." (Tr. 565). Dr. Awan then details his examination and notes the following impressions: "1. Cervicodorsal myofascial syndrome [and] 2. TL/L-S sprain." (Tr. 566). Missing from Dr. Awan's report is a sufficient medical opinion relevant to Plaintiff's functional limitation.

Without any medical opinions from Dr. Awan, Plaintiff's argument that the ALJ failed to provide good reasons for discounting the weight to be accorded to Dr. Awan's opinions is precluded as a matter of law. *See Bass,* 499 F.3d at 510 (holding that since Plaintiff's treating physician "made no medical judgments, the ALJ had no duty to give such observations [about Plaintiff's condition] controlling weight or provide good reason for doing so."); *Mitchell v. Comm'r of Soc. Sec.,* 330 Fed. Appx. 563, 569 (6th Cir. 2009) ("[T]he regulations and our case law also make clear that before the ALJ must apply the good reasons rule, there must be a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms,

---

1676683, at *4 (6th Cir. May 15, 2012) ("the nature of the opinion," i.e., a form with checked boxes, provided the ALJ with "good reason to give [the doctor's] opinion less than controlling weight."); *Terrell v. Comm'r of Soc. Sec.*, No. 12-CV-11781, 2013 WL 5178541, at *11-12 (E.D. Mich. Sept. 10, 2013); *McKivens v. Comm'r of Soc. Sec., No. 11-CV-14268*, 2012 WL 3263847, at *10 (E.D. Mich. July 9, 2012) *report and recommendation adopted sub nom. McKivens v. Commissioners of Soc. Sec.*, No. 11-14268, 2012 WL 3262885 (E.D. Mich. Aug. 9, 2012); *Kunna v. Comm'r of Soc. Sec.*, No. 11-CV-15273, 2012 WL 3111635, at *14 (E.D. Mich. June 26, 2012) *report and recommendation adopted,* No. 11-15273, 2012 WL 3111634 (E.D. Mich. July 31, 2012).

diagnosis, and prognosis. A doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence and is not entitled to the protections of the good reasons rule.") (internal citation omitted); *see also King v. Comm'r of Soc. Sec.,* 2013 WL 3456957, at *7 (E.D. Mich. July 9, 2013) ("The Sixth Circuit has held that the treating source rule does not apply unless there is a genuine assertion by the treating physician of an opinion involving the claimant's "symptoms, diagnosis, and prognosis.") (internal quotation marks and citations omitted); Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *2.

On more than one occasion, the ALJ explicitly acknowledged the treatment notes from Dr. Awan when rendering his decision. (Tr. 24) (referencing treatment notes from a February 2010 visit); (Tr. 26) (referencing treatment notes from a February 2011 visit). Plaintiff asserts the ALJ "simply highlighted negative findings while ignoring positive ones." Dkt.. No. 11 at 14. To the contrary, however, the ALJ noted that he discounted Plaintiff's complaints to Dr. Awan because he found them to be inconsistent with the total record data. *See* (Tr. 26) (noting that Plaintiff's complaints were inconsistent with the "ongoing prescribed conservative treatment and reported opinion by Dr. Awan", "claimant being assessed with a: '5/5 motor exam," and Dr. Awan's report of claimant reporting of "improved lower back pain.").

It appears that the ALJ simply weighed the evidence before him as opposed to improperly cherry picking portions of Dr. Awan's findings that supported a non-disability while ignoring the rest. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be more neutrally as weighing the evidence."). In weighing the evidence, the Court finds that the ALJ reached a reasonable conclusion within the zone of reasonable choices. *See Mullen*, 800 F.2d at 595

-20-

ii.   **The ALJ did not dismiss the opinions of the chiropractor solely because chiropractors' opinions are not considered medical sources under the federal regulations.**

Plaintiff's assertions regarding the ALJ's purported disregard of Plaintiff's chiropractor is unsupported by the record.   According to Plaintiff the ALJ "disregard[ed] the opinions of plaintiff's treating chiropractors . . . simply because they were not 'acceptable medical sources' pursuant to 20 CFR § 404.1527." Dkt. No. 11 at 14. According to Plaintiff, the ALJ failed to provide "further explanation" for his decision, and simply "declared that their opinions 'lack credibility' such that he was assigning greater weight to other medical evidence." *Id.*

A review of the record indicates that this is not the case. The ALJ did not discount the opinions of the chiropractor solely because the opinion was not from an acceptable medical source pursuant to federal regulations.   As previously discussed, the ALJ considered the treatment notes of Plaintiff's chiropractor from February of 2010, but determined that the chiropractor's records and statements lacked credibility in light of an MRI that was conducted in March of 2010, which indicated that Plaintiff's cervical spine was normal. *See* (Tr. 25) (citing (Tr. 478)). Again, in weighing the evidence, the Court finds that the ALJ reached a reasonable conclusion within the zone of reasonable choices. *See Mullen*, 800 F.2d at 595

IV. CONCLUSION

For the reasons discussed, the Court agrees with the Commissioner. As discussed, the substantial evidence standard presupposes there is a zone of choice within which the decision maker can go either way, without interference by the courts. *Felisky,* 35 F.3d at 1035; *see also Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Plaintiff may wish that the ALJ weighed the medical evidence differently to find further limitations in Plaintiff's work-related abilities. Nonetheless, after reviewing the record, the ALJ's ultimate decision was supported by substantial evidence and was within the zone of reasonable choices. *See Mullen*, 800 F.2d at 595.

For these reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment [#11], **GRANTS** the Commissioner's Motion for Summary Judgment [#14], and **AFFIRMS** the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

SO ORDERED.

Dated: February 23, 2015

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge

-22-